United States District Court
Southern District of Texas
**ENTERED**
February 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Justin Kemp, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:22-cv-00231 |
| v. | § | |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | | |

## **MEMORANDUM AND RECOMMENDATION**

This is an appeal from an adverse decision by Defendant Commissioner of Social Security against Plaintiff Justin Kemp. The case was referred to the undersigned judge. Dkt. 11. After reviewing both parties' submissions, Dkts. 13, 16, 17, the record, Dkts. 8, 9, 10, and the applicable law, it is recommended that Defendant's motion for summary judgment be granted, that Kemp's motion for summary judgment be denied, and that the decision by the Administrative Law Judge ("ALJ") be affirmed.

## **Background**

Kemp filed for social security benefits under Title II on July 23, 2020, claiming a disability onset date of May 25, 2019. R.15. He claimed he suffered from sleep apnea, post-tibial tendon dysfunction, gastroesophageal reflux

disease (GERD), irritable bowel syndrome (IBS), "hip problems," post-traumatic stress disorder (PTSD), bipolar disorder, alcohol abuse disorder, and "issues with memory." R.237.

Kemp began his career as an avionics technician with the United States Air Force. R.239. He was on active duty from August 2009 until his honorable discharge in August 2012. R.221. From 2013 to 2017, he trained as an Air Force reservist to become a cyber transportation technician but did not remain in the Reserves long enough to perform the role. R.50, 239. Following his military service, Kemp did not work until 2019, when he took on short-term jobs as a rideshare driver and a bartender at a local brewery. R.56, 63-64, 239.

In May 2020, Kemp sought a reevaluation of his disability rating with the Department of Veterans Affairs ("the VA"). *See* R.218-224. On June 3, 2020, the VA found Kemp's bipolar disorder to be 100% disabling—an increase from Kemp's previous 50% rating based on PTSD, alcohol abuse, and bipolar disorder with psychotic features. R.218-221. The rating was made effective as of his May 2020 filing date. *Id.* Shortly after receiving the VA's decision, Kemp filed for social security benefits.

Kemp's claim was denied initially and upon reconsideration on October 6, 2020 and January 12, 2021, respectively. R.15. Kemp requested a hearing, at which he testified about his physical and mental limitations. He claimed that posterior tibial tendon dysfunction affected both of his ankles, making

them susceptible to rolling and spraining even during low-intensity movements. R.50-51. This condition limited his walking to "only short duration[s] and distance[s]," R.51, and prevented him from running or balancing well, R.52. Kemp also testified that his grip strength had diminished, and his hands were shaky. R.52. But when questioned by the ALJ, Kemp acknowledged that he can manipulate buttons and clothing, feed himself, shower and scrub himself, and drive. *Id.* at 53. He also testified that he enjoys video games, disc golf, and strategy card games and that he cooks every day, helps his wife with household chores, and mows the lawn. R.55-56.

Aside from tasks at home, Kemp testified that his ability to interact externally was limited by his mental conditions. He rarely leaves the house and has not seen friends in "a while." R.54. He testified that his anxiety prevented him from driving anywhere except to the grocery store or doctor's appointments. R.53. He claimed that he had a driving "episode" that led to his hospitalization, which was the catalyst for him quitting his work as a rideshare driver and becoming reliant on his wife for general transportation. R.53, 63. According to Kemp, he has "waves" of depressive states that range from several days to months in duration. R.61. On those days, he rarely leaves bed except to take care of his dogs. R.60. Similarly, he allegedly has manic episodes that last from days to weeks, during which he "get[s] into different

projects, just kind of everything all at once," including meeting people and trying different activities.  *Id.*

On June 29, 2021, the ALJ issued an opinion finding Kemp not disabled. R.15-30.  The ALJ found that Kemp suffered from the severe impairments of obesity, bilateral carpal tunnel syndrome, rip hip disorder, ankle tendon dysfunction, bipolar disorder, major depression, anxiety disorder, and mild alcohol disorder pursuant to 20 CFR § 404.1520(c).  R.17.  Nevertheless, the ALJ found that Kemp did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in 20 CFR Pt. 404, Subpt. P, Appendix 1.  R.18-20.

Upon finding that Kemp was not presumptively disabled, the ALJ then determined that Kemp had a residual functional capacity (RFC) to "perform light work as defined in 20 CFR [§] 404.1567(b)" with several limitations:

> [T]he claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant is limited to frequent gross handling and fine fingering with the bilateral upper extremities. The claimant should have no work at unprotected heights, around dangerous moving machinery, and hazards.  The claimant should have no driving.  The claimant is *limited to performing simple, routine, repetitive tasks, requiring no more than one, two, or three step instructions, not performed in a fast-paced production environment*, involving only simple work-related decisions, and in general relatively few work place changes in a routine work setting.  The claimant

> is *limited to occasional interaction with the general
> public, coworkers, and supervisors.*

R.20-21 (emphasis added).   In reaching this determination, the ALJ disregarded medical opinions and prior administrative findings because he found Kemp to be more limited than those sources determined.  R.27-28.

Given this RFC, the ALJ found that Kemp could not perform his past relevant work as an avionics mechanic, but that he could hold jobs that were available in the national economy.  R.29.  The ALJ then relied on the testimony of a vocational expert to conclude that Kemp could still perform work as a housekeeper, price marker, or mail clerk.  R.29-30.

Kemp unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, RR.1-3, which rendered the ALJ's decision ripe for this Court's review.  *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779

(5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a scintilla, but it need not be a preponderance."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  But judicial review must not be "so obsequious as to be meaningless."  *Brown*, 192 F.3d at 496 (quotations omitted).  The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings.  *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## <u>Analysis</u>

## I.   <u>Legal Framework</u>

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe

impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).   Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)).   The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).   At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II.   The ALJ supported his step three analysis with substantial evidence.

According to Kemp, the ALJ committed myriad errors in his step three analysis. *See* Dkt. 13.   Kemp argues that (i) the ALJ inadequately considered his eligibility for meeting or equaling certain listed impairments and (ii) that the ALJ's RFC was not supported by substantial evidence. *Id.*   Because the

ALJ applied the appropriate law and supported his findings with substantial evidence, the decision should be affirmed.  *Whitehead*, 820 F.3d at 779.

> **A.   The ALJ adequately explained why Kemp's impairments did not meet or equal any listed impairments.**

> 1.   The ALJ's step-two assessment of Kemp's PTSD

As a preliminary matter, Kemp's motion appears to urge multiple, partially overlapping arguments about the ALJ's analysis of listed impairments.  First, Kemp states that the ALJ "failed to recognize that [his] conditions equal listings under 12.04 for depressive disorder, and for 12/06 (sic) for anxiety."  Dkt. 13 at 4.  But he later argues that "[t]he ALJ erred in making his *step three* determination, as Plaintiff's multiple mental impairments meet or equal Listings in 12.00 under 12.15 for posttraumatic stress disorder …," *id.* at 8 (emphasis added), and that "[t]he ALJ erred by not recognizing that 12.15 was a severe impairment," *id.*

The Court construes Kemp's motion to argue that the ALJ erred by failing to recognize that Kemp suffered from PTSD as a severe impairment in *step two*—not that the regulatory listing itself was not a "severe impairment." As such, the Court will consider whether the ALJ's determination that Kemp's PTSD did not constitute a "severe impairment" in step two caused error in the ALJ's step three analysis.  *See generally **Keel v. Saul***, 986 F.3d 551, 556-57 (5th

Cir. 2021) (an ALJ's failure to apply the correct standard for a severe impairment does not automatically warrant reversal).

These issues merge because, at step two, the claimant need only demonstrate that he suffers from at least *one* severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii).   If the claimant makes such a showing, then the ALJ proceeds to step three of the process.   *Id.*; *see also White v. Kijakazi*, 2022 WL 4473701, at *2 (S.D. Tex. Sept. 26, 2022).   The ALJ here found multiple severe impairments in step two, and so he properly proceeded to step three.   At step three, the question is whether substantial evidence supported a finding that Kemp could meet or medically equal the requirements of Listing 12.15 (trauma- and stressor-related disorders).   Although the ALJ did not conduct such an analysis, the ALJ's findings as explained below would have disqualified Kemp from meeting the criteria of Listing 12.15 (trauma- and stressor-related disorders), as well.   Thus, no error occurred.

### 2.    Analytic framework for listed impairments in step three

During step three of the ALJ's analysis, "the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work."   *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).   Each impairment's listing contains multiple paragraphs of criteria, described as paragraphs A, B, and C.   Generally, the criteria set forth in paragraph A outlines the medical diagnoses and symptoms that must be

9

present in the record.  *See generally* 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

Paragraphs B and C outline "impairment-related functional limitations that

are incompatible with the ability to do any gainful activity." *McGowan v. Saul*,

2021 WL 799325, at *3 (S.D. Tex. Jan. 6, 2021) (quoting *Willingham v. Comm'r*

*of Soc. Sec. Admin.*, 2014 WL 1050286, at *3 n.3 (E.D. Tex. Mar. 14,

2014)), *report and recommendation adopted*, 2021 WL 951859 (S.D. Tex. Mar.

10, 2021).  A claimant is presumptively disabled if she shows that she meets

requirements of paragraphs A and B or paragraphs A and C.  *Id.* (citing 20

C.F.R. Pt. 404, Subpt. P, App'x 1); *see also Heck v. Colvin*, 674 F. App'x 411,

414-15 (5th Cir. 2017) (claimant bears the burden of proof).

For each of these listings, Paragraph B measures the extent of a

claimant's limitations in four functional categories:  (1) understanding,

remembering, or applying information; (2) interacting with others;

(3) concentrating, persisting, or maintaining pace; and (4) adapting or

managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.00, 12.04, 12.06,

12.15.  The magnitude of limitation in these areas is evaluated on a "five-point

rating scale," ranging from no limitation to "marked" limitation and "extreme"

limitation—the two highest ratings.  *Id.*

Paragraph C sets out the criteria for whether a claimant's mental

disorder is "serious and persistent," as evidenced by "a medically documented

history of the existence of the disorder for a period of at least 2 years, *and* there

is evidence of both: (1) [m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [a claimant's] mental disorder…; and (2) [m]arginal adjustment, that is, [a claimant has] minimal capacity to adapt to changes in [his or her] environment or to demands that are not already part of [his or her] daily life…." *Id.*

In considering Kemp's presumptive disability under step three, the ALJ determined that the severity of Kemp's mental impairments, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." R.19. The listings are, respectively, for depressive, bipolar and related disorders (§ 12.04) and anxiety and obsessive-compulsive disorders (§ 12.06). 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04, 12.06.

### 3.   The ALJ's analysis of listed impairments

The ALJ did not discuss whether the record contained evidence of the medical diagnoses or symptoms required by any mental impairment listing's paragraph A—*i.e.*, the medical criteria for depressive, bipolar and related disorders (12.04) and anxiety and obsessive-compulsive disorders (12.06). *See* R.19-20. The ALJ skipped this analysis and addressed only paragraphs B and C, because Kemp's ability to satisfy paragraph A's requirements alone would be insufficient if he could not also satisfy one of the latter.

11

The ALJ properly analyzed the mental impairment listings as an aggregate, as the listings for 12.04 and 12.06 share the same criteria for paragraphs B and C.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.00, 12.04. Listing 12.15, which includes PTSD, also has the same criteria in paragraphs B and C.  *Id.* § 12.15.  Thus, if substantial evidence supports the ALJ's findings that Kemp did not satisfy the paragraph B or C criteria for Listings 12.04 or 12.06, those findings also would foreclose Kemp's reliance on Listing 12.15.

The ALJ found that Kemp's functional limitation in all four paragraph B function categories was "moderate"—and, as such, he did not meet paragraph B's criteria of having two markedly limited categories or one extremely limited category.  R.19-20; 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00.  In the categories of understanding, remembering, or applying information and interacting with others, the ALJ reviewed Kemp's VA mental health clinic records from thirteen visits in January, February, April, May, August October, December of 2019 and January and October of 2020.  R. 1291-94, 1276-79, 1257-60, 1249-52, 1238-41, 1199-1203, 1154-58, 1131-35, 1165-68, 1116-20, 1111-12, 1114-15, 1569-72.  Although Kemp's self-reported symptoms varied from "good spirits," R.1257 (April 2019 notes), and "okay overall," R.1114 (January 2020 notes), to "frustrated," R.1238 (May 2019 notes) and "overwhelmed and depressed," R.1154 (October 2019 notes), healthcare providers observed Kemp to have certain mental characteristics throughout

12

that period.  Specifically, the ALJ noted that Kemp was logical and goal-directed in his thought process, with a good fund of knowledge and good insight and judgment.  *See* R.19 (describing these records).  He was also cooperative with good eye contact and comprehensible speech.  *Id.*  Because of these observations—and function reports from Kemp and his friends indicating that he had hobbies and could care for his own personal hygiene—the ALJ found Kemp to be only moderately limited.  *Id.* (relying on R.243-50 (function report by Kemp's friend, Lucas Farr) and R.264-72 (Kemp's self-function report)).

For the other paragraph B categories of concentrating, persisting, or maintaining pace and adapting or managing himself, the ALJ relied on many of the same mental health treatment notes, as well as notes from Kemp's January 2020 and April 2021 visits.  R.19-20 (also citing R.1111 and R.1114 for two January 2020 visits and R.1747 for an April 2021 visit).  Again, Kemp was noted to have unimpaired attention and no "loosening of association, suicidal thoughts, psychotic symptoms, delusion, [or] hallucinations."  *Id.*  The ALJ also cited Kemp's self-report and hearing testimony, where he described being able to play video games, card games, and disc golf and perform basic household chores and labor—all of which indicated an ability to maintain concentration and interact with others.  *Id.* (citing generally R.55-56 (hearing testimony) and R.268-72 (self-report)).

Finally, for both of paragraph C criteria, the ALJ observed that the evidence did "not show a need for a highly structured setting, or suggest that a marginal adjustment, slight increase in mental demands or change in environment would probably result in decompensation." *Id.* at 20. This finding comports with Kemp's VA mental health treatment records during times of relative instability and significant life change. For example, he reported being in "good spirits" in April 2019, despite being in a recent car accident and driving for Lyft. R.1257. A few months later, he reported spending about 20 hours a day cleaning and reorganizing because his house flooded, and he and his then-girlfriend needed to move to a new home. R.1199 (August 2019 treatment notes). But in April 2021, he admitted to being non-compliant with his lithium medication because "he was going on a drinking binge and he feels more weak and tired when he both drinks and takes lithium … and he chose to drink the alcohol instead of take his medications."[1] R.1747.

Given the totality of the medical records, including these notes, substantial evidence supports the ALJ's determination that Kemp neither

---

[1] Although the ALJ cited this note in his listed impairments analysis, he did not expressly discuss Kemp's non-compliance with his medication until the RFC portion of the opinion. *See* R.26. Nevertheless, Kemp's admission that his medications were highly effective provides an independent ground for concluding that he is not disabled. *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (impairment is not disabling if it can be controlled by medication); *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

needed a structured life to avoid severe limitations, nor decompensated due to marginal changes.  The ALJ sufficiently "discuss[ed] the evidence offered in support of [the] claim for disability and to explain why [he] found [Kemp] not to be disabled at the step." *Hunter v. Kijakazi*, 2022 WL 3048177, at *5 (S.D. Tex. July 18, 2022) (quoting 42 U.S.C. § 405(b)(1)), *report and recommendation adopted*, 2022 WL 3043539 (S.D. Tex. Aug. 2, 2022).

4. The ALJ's assessment of medical opinions

As part of his complaint about the ALJ's analysis of the listed impairments, Kemp argues that the ALJ should have developed the record by retaining a psychologist or psychiatrist to testify at the hearing or to review Kemp's medical evidence.  Dkt. 13 at 6-8, 12, 14.  Kemp offers the conclusory statement that, "[d]espite the ALJ's contentions, ample objective evidence demonstrates that Plaintiff suffers from mental impairments that meet the requirements of Listings 12,15 (sic), 12.04, and 12.06."  *Id.* at 15.

Kemp's argument fails for multiple reasons.  First, the ALJ *did* assess medical opinions from mental health experts—albeit in his separate determination of Kemp's RFC.  *See* R.27.  And even though the ALJ found those experts to be unpersuasive, he did so because he found that their opinions "are an overestimation of the claimant's limitations."  *Id.*  That is, the ALJ determined that the medical evidence reflected *more* limitations than those about which the consultants opined.  The ALJ's treatment of these opinions,

15

then, cannot be deemed prejudicial, even if they had been erroneous. *See Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.").

Second, the ALJ's obligation to develop the record by soliciting additional medical opinions is not absolute. *Id.* at 557. Additional evidence is not necessary—and the ALJ did not commit any error—when the determination was otherwise supported by substantial evidence in the record. *Id.*; *West v. Kijakazi*, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022) (even though the ALJ found every medical opinion unpersuasive, remand was not appropriate because "substantial medical and psychological evidence support[ed] the ALJ's conclusions"), *report and recommendation adopted*, 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022); *Wilson v. Kijakazi*, 2022 WL 17742005, at *5 (S.D. Tex. Nov. 17, 2022) (agreeing with *West* that the ALJ can formulate an RFC based on other record evidence even if the ALJ deems all medical opinions unpersuasive), *report and recommendation adopted*, 2022 WL 17738736 (S.D. Tex. Dec. 16, 2022). As described *supra* in Part II.A.3, the record contains substantial evidence to support the ALJ's step three conclusions. The ALJ therefore was not required to solicit further opinion.

That is especially true here because, despite Kemp's repeated arguments that specialized analysis would expose the ALJ's error, he points to only one piece of evidence that purportedly exposes the ALJ's failure: a reference to a previous suicide attempt.  Dkt. 13 at 14 (citing R.660).  This reported incident was undoubtedly severe, but it notably took place in September 2016, nearly three years before Kemp's alleged disability onset date.  *Id.*  Moreover, Kemp offers no further evidence or analysis as to why this incident negates the years of subsequent treatment and medical records that the ALJ analyzed in determining the severity of Kemp's functional limitations.  The record does not indicate that Kemp attempted suicide after his onset date—and, in fact, includes instances where Kemp denied feeling symptoms of depression or anxiety.  R.1111, 1114 (January 3 and 14, 2020 treatment notes).

Accordingly, Kemp's generalized complaints about the ALJ's treatment of medical opinions lack legal and evidentiary basis.

     5.   The ALJ correctly disregarded the disability determination by the Department of Veteran's Affairs.

Additionally, Kemp insists that his 100% disability rating from the VA was indicative of the severity of his mental health impairments which, in turn,

should have led the ALJ to conclude that he met listings 12.04, 12.06, and 12.15.[2] Dkt. 13 at 10-11.

As the Commissioner rightly observes, the ALJ did consider the VA's 100% disability compensation rating. Dkt. 16 at 11 (referencing R.27-28). Far from ignoring the VA's determination, the ALJ explained that a finding by the VA "would not necessarily mean that the person meets the disability requirements of the Social Security Act." *Id.* at 28. This comports with the relevant 2017 regulation instructing ALJs not to provide "any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are ... entitled to any benefits." R.28. This updated regulation (making the VA's decision non-binding) applies to Kemp, as his claim was filed years after the March 27, 2017 effective date. *See* 20 C.F.R. § 404.1504. Accordingly, the ALJ aptly disregarded the VA's disability rating and, instead, reviewed the underlying medical evidence to make his determination. *See Zavala v. Kijakazi*, 2022 WL 3104854, at *5 (S.D. Tex. Aug. 4, 2022) (reaching this conclusion based on

---

[2] Kemp also takes a passing shot at the completeness of the record, insinuating that the ALJ did not review all relevant information from the VA. Dkt. 13 at 11. At the hearing, however, his counsel confirmed that the relevant VA records were received and put before the ALJ. R.44 ("I just got a message back from the case manager and we – the record is complete at this time.").

§ 404.1504); *see also James v. Kijakazi*, 2021 WL 4311098, at *5 (S.D. Tex. Sept. 21, 2021) (noting this regulation and affirming ALJ's decision).

**B.    The ALJ properly formulated Kemp's RFC.**

Finally, Kemp claims that the ALJ's RFC determination is "simply conclusory" and that "[a] commonsense consideration of the record would show that Plaintiff battles daily with both severe mental and physical impairments that affect his cognitive functionality." Dkt. 13 at 16-17.  Kemp's argument is merely rhetorical and conclusory, as it includes zero citations to medical opinions or medical evidence that would support a finding of disability.  And in any event, the Court may not reweigh the evidence, as the Commissioner alone is charged with formulating a claimant's RFC after reviewing the record. *See Brown*, 192 F.3d at 496; 42 U.S.C. § 405(g) (judicial review of an RFC determination is appropriate only to assess substantial evidence).

Kemp's generalized attack includes complaints that the "ALJ erred in failing to make a 'function-by-function' assessment" and that the ALJ ignored Kemp's mental limitations beyond his ability to follow only simple instructions. Dkt. 13 at 17-18.  These arguments are entirely meritless.  The ALJ complied with his obligations to assess Kemp's capacities on a function-by-function basis and to provide a narrative explanation.  *See* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

For example, regulations require the ALJ to address exertional capacities, including "sitting, standing, walking, lifting, carrying, pushing, and pulling," as well as non-exertional capacities such as the claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting." *Id.* The RFC includes an assessment of each of these capacities, some of which were implicitly included in the ALJ's "light" exertional level finding. R.20-29. The ALJ's narrative also explained his exertional findings and limitations. *Id.*

Kemp's inaccurate characterization of the ALJ's RFC is fatal to his argument—especially when coupled with his failure to identify specific limitations that he believes were erroneously omitted.[3] *See, e.g.*, *Hanby v. Colvin*, 2015 WL 12551080, at *15 (S.D. Tex. Mar. 30, 2015) (rejecting complaint that the RFC omitted unspecified limitations, as the RFC was otherwise supported by substantial evidence), *Littinger v. Astrue*, 2010 WL

---

[3] Kemp claims that the ALJ "failed to consider the effects of Plaintiff's absenteeism" when formulating the RFC. Dkt. 13 at 17. Kemp's inability to attend work regularly is not, however, a functional capacity that the ALJ needed to address. As the Commissioner accurately notes, the ability to work on a "regular and continuing basis" is inherent in the definition of an RFC—not a stand-alone consideration. Dkt. 16 at 13 (citing *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003)); *Dunbar*, 330 F.3d at 672 (both 20 C.F.R. § 404.1545 (2002) and SSR 96-8p (1996) "make clear that RFC is a measure of the claimant's capacity to perform work 'on a regular and continuing basis'").

20

744245, at *6-7 (S.D. Tex. Feb. 26, 2010) (rejecting contention that the RFC failed to consider all the claimant's limitations when she neither identified the limitations nor cited the record).

Accordingly, Kemp has not carried his burden on appeal, and his arguments regarding the sufficiency of the RFC should be rejected.

### Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Kemp's motion for summary judgment (Dkt. 13) be **DENIED**, the Commissioner's motion for summary judgment (Dkt. 16) be **GRANTED**, and the ALJ's decision be **AFFFIRMED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 27, 2023 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge